UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NAEL LOPEZ,

                                    Plaintiff,

                    -against-                                            **REPORT AND**
                                                                        **RECOMMENDATION**
                                                                        16-CV-4028-NGG-SJB

ROYAL THAI PLUS, LLC (d/b/a HUA LAMPHONG),
PUNYACHALEE PHAKAMAS,
HUA LUMPHONG,
YANAKARN LAKSANAPHROM,

                                    Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

On July 20, 2016, Plaintiff Nael Lopez ("Lopez") brought this action against

Royal Thai Plus, LLC, doing business as Hua Lamphong ("Royal Thai"), and several

individuals: Punyachalee Phakamas ("Phakamas"), Hua Lumphong ("Lumphong"),[1] and

Yanakarn Laksanaphrom ("Laksanaphrom").[2]  On August 31, 2017, Plaintiff moved for a

default judgment against Royal Thai and Phakamas.  On August 31, 2017, the Honorable

Nicholas G. Garaufis referred the motion to the Honorable Peggy Kuo for a report and

recommendation.  On September 13, 2017, the case was transferred to the undersigned.

For the reasons stated below, it is respectfully recommended that Plaintiff's motion be

granted and a default judgment be entered.

---

[1] Plaintiff did not file an executed summons with respect to Lumphong.  As a result, should Judge Garaufis accept this report and recommendation, Plaintiff should file a stipulation of dismissal with respect to Lumphong, or show cause why the case against Lumphong should not be dismissed for failure to prosecute.

[2] Laksanaphrom filed an answer on November 29, 2016.  (Dkt. No. 11).  On September 27, 2017, a stipulation of dismissal was filed with respect to Laksanaphrom. (Dkt. No. 27).  On October 3, 2017, Laksanaphrom was dismissed from the case with prejudice.  (Dkt. No. 28).

<u>Factual Background and Procedural History</u>

Royal Thai is a Thai restaurant located in Brooklyn, New York.  (Compl. ¶ 2).

Defendants Phakamas, Lumphong, and Laksanaphrom are owners, managers,

principals or agents of Royal Thai.  (Compl. ¶ 3; *see also* Declaration of Nael Lopez

dated August 25, 2017, Dkt. No. 24, Ex. F ("Decl.") ¶¶ 4-5).

Plaintiff is a former employee of Defendants, who worked as a food preparer and

delivery worker.  (Compl. ¶¶ 4-5; Decl. ¶ 6).  Though a delivery worker, Plaintiff was

required to spend several hours each day performing duties for which he did not receive

tips, and which were unrelated to deliveries, including preparing food, dishwashing,

cleaning the entire restaurant, taking out garbage, twisting and tying up deliveries, and

carrying down and stocking deliveries.  (Compl. ¶¶ 4-5; Decl. ¶ 7).

Plaintiff alleges that he regularly worked for Defendants from September 2015

until on or about June 26, 2016, approximately 79 hours per week, and was not paid as

required by New York or federal law during that period.  (Compl. ¶¶ 48, 62-69; Decl. ¶

11).  According to the Complaint, Defendants paid him as a tipped employee and used

his tips as a means of paying him less than the statutorily determined minimum wage.

(Compl. ¶¶ 65-69).  Under New York and federal law, Defendants were not permitted to

do so, because as Plaintiff alleges, his non-tipped duties exceeded 20% of his workday.

(*Id.*).  Plaintiff also alleges that he was paid a fixed salary of $100 per day, in cash, from

approximately September 2015 until or about June 2016; and for his last two weeks at

work, he was not paid at all.  (Compl. ¶¶ 49-51; Decl. ¶ 13-14).  These practices allegedly

violated legal requirements that he be paid the statutory minimum wage and receive

additional wages for overtime.  (Compl. ¶ 69).  Finally, he alleges that various state

notice requirements were ignored by Defendants.  Defendants never notified him that

his tips would be offset against his wages, provided him with an accurate statement of wages with each wage payment, or provided him with a required wage notice. (Compl. ¶¶ 58-60; 75; 80-81; Decl. ¶ 18-21, 23-24). Plaintiff was also required, he alleges, to pay for an electric bicycle, battery, a chain, and a battery charger—which were required "tools of the trade"—out of his own funds. (Compl. ¶ 61).

Plaintiff alleges eight causes of action based on the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") and N.Y. Labor Law ("NYLL"): violation of 1) the minimum wage provisions of FLSA (29 U.S.C. § 206(a)); 2) the overtime provisions of FLSA for work in excess of 40 hours per week (29 U.S.C. § 207(a)(1)); 3) the New York Minimum Wage rate (NYLL § 652(1)); 4) the overtime provisions of NYLL (NYLL § 190 *et seq.*); 5) the Spread of Hours Wage Order for any day he had to work over 10 hours a day (NYLL §§ 190 *et seq.* and 650 *et seq.* and N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") Tit. 12, § 142-1.6); 6) the notice and recordkeeping requirements of NYLL (NYLL § 195(1)); 7) the wage statement provisions of NYLL (NYLL § 195(3)); and 8) failure to reimburse Plaintiff for equipment costs (29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b). (Compl. ¶¶ 85-120).

Plaintiff seeks recovery of $44,021.25 in unpaid minimum and overtime wages, $2679.25 for spread of hours pay, $10,000 for statutory damages for violation of notice and record keeping and wage statement provisions, $46,700.50 in liquidated damages, $5971 in attorney's fees and costs, pre-judgment interest, and if any amount remains unpaid ninety days following judgment or ninety days after the expiration of time to appeal and no appeal is filed (whichever is later), an increase in the judgment by 15% pursuant to NYLL § 198(4). (Pl. Mem., Dkt. No. 29, at 4-8; Compl., Prayer for Relief ¶¶ m, n, p, r, s, and t).

On June 28, 2017, the Clerk of Court issued certificates of default against Royal Thai and Phakamas. (Dkt. Nos. 20, 21).[3] On August 31, 2017, after the Court issued an order to show cause and granted a motion for extension of time to file a default judgment motion, (Dkt. No. 22), Plaintiff moved for a default judgment against those Defendants. (Dkt. No. 23). Because the motion failed to comply with Local Rules 7.1(a)(2) and 55.2(b)(3), the Court ordered Plaintiff to submit a memorandum of law and a proposed order on December 11, 2017. On December 29, 2017, Plaintiff provided supplemental briefing. (Dkt. Nos. 29-31).

Discussion

## I.     Entry of Default

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2).

---

[3] Under FLSA, a plaintiff may file a claim two years after the cause of action accrues or three years if the violation is willful. 29 U.S.C. § 255(a). The statute of limitations under NYLL is six years. NYLL § 663(3). The Complaint was filed in July 2016, one month after Plaintiff was no longer employed by Defendants, and is timely under both FLSA and NYLL.

The Clerk entered a default against Royal Thai and Phakamas on June 28, 2017. (Dkt. Nos. 20, 21).

A threshold question before reaching liability or damages is whether Royal Thai and Phakamas's conduct is sufficient to warrant default judgment being entered.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001).  These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted).

As to the first factor, the failure by Royal Thai Plus and Phakamas to respond to the Complaint demonstrates the default was willful.  *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at * 1 (S.D.N.Y. Dec. 20, 2007).  They had sufficient notice of the present litigation.  Both were properly served with a summons and the Complaint.  (Dkt. Nos. 6 & 8, Affs. of Service).  A copy of a summons and the Complaint was left with an authorized agent in the Office of the Secretary of State of the State of New York for Royal Thai on September 20, 2016.  (Dkt. No. 6).  A copy of a summons and the Complaint was affixed to Phakamas's dwelling house/usual place of abode on October 8, 10, and 11, and was also mailed to Phakamas on October 11, 2016.  (Dkt. No. 8).  The motion for default judgment and certificates of default were similarly served upon them.  (Dkt. No. 25).  Notwithstanding this notice

and service, Royal Thai Plus and Phakamas did not respond to the Complaint, did not appear, and have not in any way attempted to defend themselves.

As to the second factor, the Court cannot conclude there is any meritorious defense to Plaintiff's allegations because neither Royal Thai nor Phakamas appeared and no defense has been presented to the Court. *See, e.g.*, *IndyMac Bank*, 2007 WL 4468652, at *1; *United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012). As to the third factor, the non-defaulting party, Plaintiff Lopez, would be prejudiced if the motion for default were denied in this case "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, No. 06-CV-14226, Dkt. No. 18 (S.D.N.Y. Jan. 26, 2009).

As a result, all three factors permit entry of a default judgment. The Court now turns to the liability imposed and damages to be awarded in such a judgment.

II.   Liability

When a defendant defaults, a court, on consideration of a plaintiff's default judgment motion, "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In addition, a party's default is deemed as an admission of all of well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotation marks omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (3d ed. 2017) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.").

A.    Minimum Wage and Overtime Claims

Plaintiff has alleged claims for violations of both FLSA and NYLL's respective minimum wage and overtime requirements.

1.    FLSA

a.    Threshold Requirements

To establish a claim under FLSA, "plaintiff must prove the following: (1) the defendant is an employer subject to [ ] FLSA; (2) the plaintiff is an 'employee' within the meaning of [ ] FLSA; and (3) the employment relationship is not exempted from [ ] FLSA." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-451, 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016) (citations omitted), *report and recommendation adopted*, No. 16-CV-451, 2017 WL 780799 (Feb. 28, 2017).

i.    Employers Subject to FLSA

Employers who have employees "engaged in commerce or in the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage") are

7

subject to FLSA's minimum wage and overtime requirements.  29 U.S.C. §§ 206(a), 207(a)(1); *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009).

Plaintiff has not alleged he was personally "performing work involving or related to the movement of persons or things . . . between states." *Shim*, 2009 WL 211367, at *2 (quotations omitted); *see generally Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985).  As a result, individual coverage does not trigger any FLSA minimum wage or overtime obligation for either Royal Thai or Phakamas.

Enterprise coverage—which exists where an employer has (1) employees engaged in commerce or in the production of goods for commerce; and (2) an annual gross volume of sales greater than $500,000—does trigger those obligations.  29 U.S.C. § 203(s)(1)(A); *see also Saucedo*, 2016 WL 8376837, at *4.

With respect to the first requirement, the Complaint alleges that Royal Thai and Phakamas have employees, like Plaintiff, who handled items that traveled in interstate commerce.  The Complaint alleges, for example, that "numerous items that were used in the preparation of typical Thai plates on a daily basis were produced outside of the State of New York."  (Compl. ¶ 38).  Such handling of "goods or materials that have moved or been produced in interstate commerce," *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998), is sufficient to satisfy the interstate commerce requirement for enterprise coverage.  *See, e.g.*, *Juarez v. Wheels Pizza Inc.*, No. 13-CV-261, 2015 WL 3971732, at *2 n.3 (S.D.N.Y. June 30, 2015) (finding that transport of food items such as soft drinks and beer was sufficient to establish that pizza business was engaged in interstate commerce).

As to the second requirement, Plaintiff alleges that Royal Thai and Phakamas had an annual gross sales volume of more than $500,000.  (Compl. ¶ 37).

"In the context of a default under [ ] FLSA, courts do not require any additional factual allegations to establish enterprise coverage," *Saucedo*, 2016 WL 8376837, at *4, and the Court concludes that FLSA's minimum wage and overtime provisions apply to Royal Thai and Phakamas.[4]

### ii.   Employees Covered By FLSA

Any "individual employed by an employer" is protected under FLSA's minimum and overtime provisions.  29 U.S.C. § 203(e)(1).  To determine whether an individual is "employed," "the ultimate question is whether the putative employee is economically dependent on the putative employer.  In other words, the court must determine whether, as a matter of economic reality, the worker depends upon someone else's business for the opportunity to render service or is in business for himself."  *Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (quotations and alterations omitted).  The Complaint alleges that Plaintiff was employed by Royal Thai, and there is no basis from the Complaint to infer anything other than Plaintiff was working for a business owned and operated by someone else.  (Compl. ¶¶ 1, 9).

---

[4] Under FLSA, an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ."  29 U.S.C. § 203(d).  "An individual may be liable as an employer under [ ] FLSA so long as he exercises operational control over the employee in question.  *See Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013), and individuals who are found to be employers under [ ] FLSA may be held jointly and severally liable to the plaintiff.  *Moon v. Kwon*, 248 F. Supp. 2d, 201, 237 (S.D.N.Y. 2002)."  *Saucedo*, 2016 WL 8376837, at *5.  The Complaint alleges that Phakamas is an owner, manager, principal or agent of Royal Thai, and operates Royal Thai.  (Compl. ¶ 3).  This allegation is sufficient to subject Phakamas to FLSA liability as an employer, along with Royal Thai.

### iii.   Exempt Employment Relationship

There is no basis from the Complaint to infer that the employment relationship between Plaintiff and Defendants Royal Thai and Phakamas is exempt from FLSA.  *See* 29 U.S.C. § 203 (FLSA "definitions" and exemptions).

### b.  FLSA Minimum Wage Claim

Plaintiff first alleges violation of FLSA's minimum-wage provision, which provides that "[e]very employer shall pay to each of his employees . . . not less than . . . [the federal minimum wage]."  29 U.S.C. § 206(a).  The Fair Minimum Wage Act of 2007 gradually raised the federal minimum wage from $5.15 per hour to $7.25 per hour.  *Id.*  The current rate of $7.25 went into effect on July 24, 2009, and is the applicable FLSA rate for the entire period alleged in the Complaint.  *Id.*  Where a state's minimum wage is higher than the federal minimum wage, the state's minimum wage must be paid by the employer to satisfy FLSA's minimum wage requirement.  29 C.F.R. § 778.5; *see also* 29 U.S.C. § 218(a); *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).

In 2015, the minimum wage under New York law was $8.75 per hour; it increased to $9.00 per hour as of December 31, 2015 for 2016.  NYLL § 652(1).  For the relevant period in the Complaint—September 2015 to June 2016—New York's minimum wage law rates were higher than the federal rate, and the New York wage rate determines what back-wages, if any, Plaintiff is owed pursuant to FLSA.

The Complaint alleges that "[f]rom approximately September 2015 until on or about June 26, 2016, Plaintiff Lopez worked from approximately 12:00 p.m. until on or about 11:30 p.m., four days a week and from approximately 12:00 p.m. until on or about 11:00 p.m. three days a week (typically 79 hours per week)." (Compl. ¶ 48).  During that

time, "Defendants paid Plaintiff Lopez a fixed salary of $100 per day," or $700 weekly. (Compl. ¶ 50). Under FLSA, an employee's regular hourly rate is determined by "dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.1. Under this formula (*i.e.* dividing the salary by hours worked), Plaintiff had an hourly wage rate of $8.86 ($700 divided by 79 hours, rounded). Thus, for the hours he worked in 2016, when New York required that he be paid $9.00 an hour, Plaintiff has a FLSA minimum wage claim; but for his 2015 hours, when the applicable minimum wage was $8.75, he has no FLSA claim.

### c. FLSA Overtime Claim

Section 207(a)(1) of FLSA requires that an employee working "in excess of" 40 hours in a given workweek will be compensated for that "excess work 'at a rate not less than one and one-half times the regular rate at which he is employed' (*i.e.* time and a half)." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). In *Lundy*, the Second Circuit articulated "the degree of specificity needed to state an overtime claim under FLSA." *Id*. A plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Id*. Or put differently, to survive a motion to dismiss an FLSA overtime claim, a plaintiff must allege that in at least one workweek he or she worked at least 40 hours, and also worked some uncompensated time in that week in excess of the 40 hours. *See id*.

An overtime claims fails to satisfy this requirement if it generally alleges that the plaintiff was not paid for overtime hours worked. *Nakahata v. New York-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). The requirement that plaintiffs "must allege overtime without compensation in a given workweek, [is] not an invitation

to provide an all-purpose pleading template alleging overtime in some or all workweeks." *Dejesus v. HF Management Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (citations and quotations omitted).  Nor is it acceptable for a plaintiff to just track "the statutory language of [ ] FLSA . . . [without] alleging [any] particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *Id.* at 89.

Rather, a plaintiff must "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata*, 723 F.3d at 201.  Only with such factual context will a plaintiff's overtime claim move from merely "conceivable to plausible." *Dejesus*, 726 F.3d at 90 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570).  "What aspects of [a plaintiff's] position, pay, or dates of employment are necessary to state a plausible claim for relief . . . is a case-specific inquiry for the trial court[.]" *Nakahata*, 723 F.3d at 201 (emphasis removed) (citations omitted).  A plaintiff is not required "to keep careful records and plead . . . hours with mathematical precision," but may draw on "memory and experience" to provide complaints with "sufficiently developed factual allegations" to support the claim that he was denied overtime in violation of FLSA. *Dejesus*, 726 F.3d at 90.

Plaintiff's overtime claim contains the necessary factual allegations to state a FLSA overtime claim.  He alleges that "[f]rom approximately September 2015 until on or about June 26, 2016" he worked "from approximately 12:00 p.m. until on or about 11:30 p.m., four days a week" and "from approximately 12:00 p.m. until on or about 11:00 p.m. three days a week (typically 79 hours per week)." (Compl. ¶ 48).  These are specific weeks, with specific time periods, in which Plaintiff has alleged he worked more than 40 hours per day.

In addition, based upon the daily and weekly salary paid by Defendant ($100 per day; $700 per week), he has stated an overtime claim under FLSA, as the calculations contained in the table demonstrate:

| | FLSA Overtime Claim (2015) | FLSA Overtime Claim (2016) |
|---|---|---|
| Hours Per Week | 79 | 79 |
| Weekly Salary | $700 | $700 |
| FLSA Calculated Hourly Wage | $8.86 | $9.00 |
| 40 Hour Wages Due | $354.40 | $360.00 |
| FLSA Calculated Overtime Wage Rate | $13.29 | $13.50 |
| Weekly Overtime Hours | 39 | 39 |
| Overtime Wages Due | $518.31 | $526.50 |
| Total Overtime Paid | $345.60 | $340.00 |
| Total Overtime Unpaid (Per Week) | $172.71 | $186.50 |

Under FLSA, unpaid overtime wages are calculated by first determining the employee's regular hourly rate, and then multiplying by 1.5. The regular hourly rate is determined by "dividing the salary by the number of hours which the salary is intended to compensate," 29 C.F.R. § 778.1, or the applicable minimum wage if the regular rate falls below the applicable minimum. 29 C.F.R. § 778.5. For each week he worked in 2015, under FLSA, Plaintiff's regular hourly rate was $8.86 ($700 divided by 79), which is above the applicable minimum wage ($8.75). He was owed $13.29 per hour for each overtime hour worked. He worked 39 overtime hours each week, was owed a total of $518.31 for that overtime, and was only paid $345.60 for those overtime hours, and is therefore owed $172.71 per week for unpaid overtime worked in 2015.

For each week he worked in 2016, Plaintiff's regular hourly rate was $9.00, because the applicable minimum wage exceeded what he was paid ($8.86 per hour). He was owed $13.50 per hour for each overtime hour worked. He worked 39 overtime hours each week, was owed a total of $526.50 for that overtime, and was only paid

$340.00 for those overtime hours, and is therefore owed $186.50 per week for unpaid overtime worked in 2016.

2. NYLL Claims

a. Threshold Requirements

A covered "employee" under NYLL is "any individual employed or permitted to work by an employer in any occupation."  NYLL § 651(5); *see generally Gonzales v. Gan Israel Pre-Sch.*, No. 12-CV-06304, 2014 WL 1011070, at *9 (E.D.N.Y. Mar. 14, 2014). There are a number of exemptions to that definition, none of which are applicable in this case. *See* NYLL § 651(5).  The Complaint alleges that Plaintiff was an employee of Royal Thai (Compl. ¶¶ 1, 4), which is alleged to be a regulated employer under NYLL. (*Id.* ¶¶ 32, 35).  The Court accepts these factual allegations as true, and concludes that NYLL applies to Plaintiff.  *E.g.*, *Gonzales*, 2014 WL 1011070, at *9.

b. NYLL Minimum Wage Claim

New York regulations provide that the "regular rate of pay" for employees in the hospitality industry, which includes restaurant employees, *see* N.Y.C.R.R. 146-3.1, is calculated by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  N.Y.C.R.R. 146-3.5.

Under the New York hospitality regulation calculation (*i.e.* dividing the weekly earnings by the lesser of hours worked or 40), Plaintiff had an hourly wage rate of $17.50 ($700 divided by 40 hours).  This hourly wage rate is higher than the applicable

minimum wage rate for both 2015 and 2016, and Plaintiff has no NYLL minimum wage claim under this calculation.[5]

      c.  <u>NYLL Overtime Claim</u>

NYLL's overtime provision specifies that eight hours constitutes a "legal day's work," NYLL § 160, and that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate. . . ." 12 N.Y.C.R.R. 142-2.2. As discussed above, the Complaint alleges that Plaintiff worked 39 hours of overtime per week; and the calculations in the table below demonstrate (using the New York hospitality regulation for calculating of wage rates) that he was not paid for that overtime worked:

|  | NYLL Overtime Claim |
| --- | --- |
| Hours Per Week | 79 |
| Weekly Salary | $700 |
| NYLL Calculated Hourly Wage | $17.50 |
| NYLL Calculated Overtime Wage Rate | $26.25 |
| Weekly Overtime Hours | 39 |
| Overtime Wages Due | $1,023.75 |
| Total Overtime Paid | $0.00 |
| Total Overtime Unpaid (Per Week) | $1,023.75 |

New York's hospitality industry regulations determine hourly wage rate by dividing weekly wages by the lesser of 40 or actual hours worked; the assumption embedded in such a calculation is that, unless evidence suggests otherwise, none of the paid wages are to be credited to overtime. Or put differently, for Plaintiff under NYLL,

---

[5] "Since January 1, 2011, an employer may take a tip credit and pay employees a reduced minimum wage if, among other things, the employer has notified the employee of its intention to take the tip credit." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 118 (S.D.N.Y. 2012). Although the Complaint alleges that Defendants took tip credits in order to pay Plaintiff a lower minimum wage, that claim has been abandoned; Plaintiff's default judgment papers do not use it as a basis for any calculation. (*See* Decl. ¶ 18). As such, in calculating Plaintiff's minimum wage, the Court only relies on the $100 per day salary and the hours worked.

the $700 he was paid was for the first 40 hours he worked; for the additional 39 overtime hours he worked, he received nothing.

Under NYLL, for each week he worked, Plaintiff's hourly wage rate was $17.50 ($700 divided by 40), which is above the applicable minimum wage for the entirety of his employment. He was owed $26.25 per hour for each overtime hour worked. He worked 39 overtime hours each week, was owed a total of $1023.75 for that overtime, and was paid nothing for those overtime hours, and is therefore owed $1023.75 per week for unpaid overtime worked.

Under these circumstances, Plaintiff has alleged a claim for unpaid overtime under NYLL. *See, e.g.*, *Romero v. Rung Charoen Sub, Inc.*, No. 16-CV-1239, 2017 WL 4480758, at *10 (E.D.N.Y. Sept. 30, 2017) ("Because the regular rates of pay under the NYLL are calculated by dividing Plaintiff's total weekly earnings by 40 hours per week, Plaintiff's total weekly earnings necessarily do not include overtime premiums. Accordingly, Defendants violated the overtime provisions of the NYLL."); *Miguel v. Mi Bella Puebla Corp.,* No. 16-CV-1593, 2017 WL 4838820, at *5 (E.D.N.Y. Sept. 6, 2017), *report and recommendation adopted*, No. 16-CV-1593, 2017 WL 4838761 (Oct. 24, 2017) (performing same NYLL overtime calculation).

B. <u>Spread of Hours</u>

Plaintiff also alleges a violation of NYLL's spread-of-hours provision, which requires that an employee in a restaurant receive "one additional hour of pay at the basic minimum hourly wage rate[,]" in addition to the minimum wage for any day the employee works 10 or more hours. N.Y.C.R.R. § 146-1.6(a). This spread of hours protection extends to "all employees in restaurants . . . regardless of a given employee's regular rate of pay." *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234,

2016 WL 4704917, at *7 (S.D.N.Y. Sept. 8, 2016) (citations and quotations omitted). That is, the spread of hours benefit is not limited to those employees earning minimum wage.

Because the Complaint alleges that Plaintiff worked 11 or 11.5 hours per day, and Plaintiff did not receive an additional one hour's pay, Plaintiff has stated a claim for violation of NYLL's spread of hours provision.  (Compl. ¶¶ 110-111).  *E.g., Miguel*, 2017 WL 4838820, at *5.

C.  Wage Theft Protection Act Claims

New York's Wage Theft Protection Act ("WTPA") requires employers to provide written wage notice "at the time of hiring."  The notice must contain, among other things, information regarding the employee's "rate of pay," which for non-exempt employees includes a statement about his "regular hourly rate and overtime rate of pay." NYLL § 195(1)(a).  The penalty for failing to provide that notice is $50 per day, up to $5000.  NYLL § 198(1-b).

The WTPA also requires that employers provide employees wage statements "with every payment of wages" that contain, among other things, the dates of work covered by the statement, the rate of pay, and gross and net wages paid.  NYLL § 195(4). The penalty for failing to provide those wage statements is $250 per day, up to $5000. NYLL § 198 (1-d).

Plaintiff has alleged that Defendants never provided Plaintiff with a wage notice at the start of his employment, or a wage statement with each payment of wages as required.  (Compl. ¶¶ 113, 116).  This is sufficient to state these two claims under the WTPA.

D.  "Tools of the Trade" Claim

If there are "tools of the trade" used or required for "the performance of the employer's particular work," then an employer may shift the costs for those tools to the employee, so long as so doing does not reduce the employee's wage below the minimum wage or lower the amount of overtime pay due.  29 C.F.R. § 531.35.

Plaintiff alleges that he was forced to pay, without reimbursement, for costs of obtaining and maintaining "tools of the trade" such as a bicycle.  (Compl. ¶ 119). However, in his motion papers, he provides no information about the costs of such items; the Court concludes he is not seeking recoupment of those costs, and that he has abandoned this claim.[6]

*          *          *

The Court determines that Plaintiff has properly alleged, and by virtue of their default, Defendants Royal Thai and Phakamas have admitted liability for violations of:

- the minimum wage provisions of FLSA for the hours Plaintiff worked in 2016,

- the overtime provisions of FLSA and NYLL for the entirety of the period alleged in the Complaint,

- the NYLL spread of hours provision for the entirety of the period alleged in the Complaint,

- the notice and recordkeeping requirements of NYLL, and

- the wage statement provisions of NYLL.

_____

[6] Similarly, Plaintiff alleges that he was not compensated for his final two weeks of work.  (Compl. ¶ 51; Decl. ¶ 14).  The minimum and overtime claim only partially compensates Plaintiff for this period (*i.e.* what is sought in the motion papers would not compensate Plaintiff for his base salary of $100 per day).  However, Plaintiff again does not seek compensation for those unpaid amounts in his motion papers, and the Court concludes he has abandoned this claim as well.

III.   <u>Damages</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup,* 973 F.2d at 158.  "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (internal quotation marks and citations omitted).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (collecting cases).

That being said, because under FLSA "[t]he burden is on an employer properly to record hours," a "plaintiff need not compute FLSA damages with precision." *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x. 19, 20-21 (2d Cir. 2002).  An employee may meet his burden of showing the amount and extent of his hours work through his own recollection.  *See Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011).  As such, "[i]n a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, 08-CV-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (collecting cases), *report and recommendation adopted*, 2009 WL 513371 (S.D.N.Y.

Feb. 27, 2009); *see also McLean v. Wayside Outreach Dev. Inc.*, 624 F. App'x 44, 45 (2d Cir. 2015) (district court did not abuse its discretion by failing to hold a hearing to determine damages where the court relied on "a single affidavit only partially based upon real numbers") (citations omitted).

    A.  <u>Overtime and Minimum Wage Violations</u>

        i.    <u>Overtime Wages Owed</u>

The spreadsheet submitted by Plaintiff seeks $44,021.25 in overtime pay for the duration of his employment. (Dkt. No. 24, Ex. G). This calculation is based on the period from September 1, 2015 to June 30, 2016. The Complaint and Plaintiff's Declaration, however, allege that he worked from September 1, 2015 (a Tuesday) until Sunday, June 26, 2016. (Compl. ¶ 20; Dkt. No. 24, Ex. G). Accepting Plaintiff's start date as Tuesday, September 1, 2015, Plaintiff is entitled to 42 full weeks of overtime pay and an additional 19.5 hours of overtime pay for the period from June 21 to June 26, 2016. Using the overtime rates calculated earlier, *see supra* at 13 & 15, this results in the following calculations under FLSA and NYLL:

|  | FLSA Overtime Claim | NYLL Overtime Claim |
|---|---|---|
| Hours Per Week | 79 | 79 |
| Weekly Salary | $700 | $700 |
| Hourly Wages | $8.86 | $17.50 |
| 40 Hour Wages Due | $354.40 | $0 |
| Overtime Wage Rate | $13.29 | $26.25 |
| Overtime Hours (Weekly) | 39 | 39 |
| Overtime Wages Due (Weekly) | $518.31 | $1,023.75 |
| Total Overtime Paid (Weekly) | $345.60 | $0 |
| Total Overtime Unpaid (Per Week) | $172.71 | $1,023.75 |
| Full Weeks Overtime Not Paid | 42 | 42 |
| Stub Hours Overtime (6/21-6/26) | 19.5 | 19.5 |
| Total Overtime Due | $7,512.98 | $43,509.38 |

Plaintiff is not entitled to recover under both FLSA and NYLL for overtime earned during the same period. *See Gamero v. Koodo Sushi Corp.*, No. 15-CV-2697, 2017 WL

4326116, at *11 (S.D.N.Y. Sept. 28, 2017) (collecting cases).  "If a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief."  *Id.* (quotations omitted).  As the table demonstrates, Plaintiff's recovery under NYLL, by virtue of the effect of hospitality industry regulations, which credits an employee's weekly salary—no matter how large—to the first 40 hours of work, is substantially greater than that under FLSA.  *See supra* at 13 & 15.  When confronted with similarly large disparities, other courts have concluded that awarding the substantially greater sum is appropriate.  *Romero*, 2017 WL 4480758, at *12 n.11; *Zhang v. Red Mountain Noodle House Inc.*, 2016 WL 4124304, at *3 ("[T]his Court will calculate Plaintiffs' regular rate for the purposes of unpaid overtime compensation using [ ] NYLL Hospitality Industry Wage Order's method of calculation, since it will entitle them to a higher recovery and prevent minimum wage violations.").  This Court sees no legal basis to deviate from that practice in this case, and recommends that Plaintiff be awarded $43,509.38 in overtime compensation.

ii.  Minimum Wages

As noted *supra* at 10-11, Plaintiff has stated a claim for minimum wage violations in 2016 under FLSA.  Plaintiff was paid $8.86 an hour, but FLSA required (by incorporating New York's higher hourly minimum wage) that he be paid $9.00.  However, in calculating Plaintiff's overtime claim under NYLL, he was found to have a 2016 hourly rate of $17.50, which would certainly not violate FLSA's minimum wage provision.  Plaintiff's damages submission does not seek a payment of any unpaid minimum wages, and as such, the Court does not recommend that any such wages be awarded.  In any event, the Court cannot see any basis to award such wages.  Plaintiff

cannot use NYLL to obtain unpaid overtime wages based on an hourly wage rate that would otherwise satisfy FLSA's minimum wage requirement, and simultaneously claim that he *also* is entitled to minimum wages under FLSA, based on a different hourly wage rate. This form of double recovery is prohibited. *See, e.g.*, *Martinez v. Dannys Athens Diner Inc.*, No. 16-CV-7468, 2017 WL 6335908, at *4 (S.D.N.Y. Dec. 5, 2017) (awarding only overtime wages under NYLL but not minimum wages under FLSA where hospitality regulation was applied).

    B. <u>Spread of Hours</u>

"Spread of hours compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than ten hours." *Cabrera v. 1560 Chirp Corp.*, No. 15-CV-8194, 2017 WL 1289349, at *6 (S.D.N.Y. Mar. 6, 2017) (quotations omitted), *report and recommendation adopted*, No. 15-CV-8194, 2017 WL 1314123 (Apr. 6, 2017). Plaintiff seeks $2679.25 in spread of hours pay. (Pl. Mem. at 6).

For the period of September 1, 2015 until December 30, 2015 set forth in the Complaint, the applicable New York minimum wage was $8.75. There are 121 days in this period (30 in September; 31 in October; 30 in November; 30 in December). Plaintiff is entitled to $1058.75 for this period. The minimum wage increased to $9.00 as of December 31, 2015. For the period alleged in the Complaint from December 31, 2015 to June 26, 2016, there are 179 days (1 in December; 31 in January; 29 in February; 31 in March; 30 in April; 31 in May; 26 in June). Plaintiff is entitled to $1611 in spread of

hours pay for this period.  The Court therefore recommends that Plaintiff be awarded $2669.75 in spread of hours pay.[7]

    C.  Liquidated Damages

Plaintiff seeks liquidated damages under FLSA and NYLL.  Under FLSA, "[a]ny employer who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  "The Portal–to–Portal Act, 29 U.S.C. § 251 *et seq.,* which amended [ ] FLSA, affords district courts discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate [ ] FLSA."  *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260).

NYLL also allows for liquidated damages.  An employee can recover liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  NYLL § 198(1–a).  For all NYLL claims that accrued on or after April 9, 2011, an employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due (prior to this, liquidated damages were 25 percent).  NYLL § 663(1).

In light of the default by Royal Thai and Phakamas, there has been no showing that they acted in good faith or that the Court should exercise its discretion to deny

---

[7] Plaintiff appears to have miscalculated his spread of hours damages by excluding the start and end dates for each time period, and the additional day in a leap year.

liquidated damages.  *See Brock v. Wiliamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (noting that employer bears burden of establishing good faith defense under § 260 through "plain and substantial evidence"); *Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 459 (E.D.N.Y. 2007) ("Simply put, double damages are the norm, single damages the exception, the burden on the employer.") (citation omitted); *Xochimitl*, 2016 WL 4704917, at *15 ("In situations where defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award.") (quotations omitted).

Nonetheless, Plaintiffs may not recover liquidated damages under both statutes for the same violation.  Courts generally allow a single award of liquidated damages, under the statute that provides a plaintiff with the largest recovery.  *Leon v. Chen*, No. 16-CV-480, 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017).

Under NYLL, liquidated damages are available for both unpaid overtime compensation and spread of hours compensation, and are 100% of this total amount. *Calle v. Yoneles Enters. Inc.*, No. 16-CV-1008, 2017 WL 6942652, at *15 (E.D.N.Y. Oct. 24, 2017), *report and recommendation adopted*, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018).  FLSA liquidated damages are not as extensive, *see id.*, and the Court therefore recommends that Plaintiff be awarded $2669.75 in spread of hours liquidated damages plus $43,509.38 in overtime compensation liquidated damages, for a total of $46,179.13.

D. <u>WTPA Damages</u>

Plaintiff worked for Royal Thai for a total of 300 days.  *See supra* at 21-22.  For the wage notice claim, he is entitled to recover $50 per day up to a maximum of $5000. *Supra* at 17.  As a result, for the 300 days during which he received no wage notice, he is

entitled to $5000.  For the wage statement claim, he is entitled to recover $250 per day up to a maximum of $5000.  *Supra* at 17.  For the 300 days during which he received no wage statements, he is entitled to $5000.  Plaintiff should be awarded a total of $10,000 in WTPA damages.

    E.  <u>Pre-Judgment Interest</u>

Plaintiff also seeks pre-judgment interest.  Although it is "well settled" that pre-judgment interest is not awardable under FLSA where liquidated damages are awarded, *Begum v. Ariba Disc., Inc.*, 12-CV-6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015), "NYLL permits the award of both liquidated damages and pre-judgment interest."  *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015).  Plaintiff is thus entitled to an award of pre-judgment interest on the overtime and spread of hours damages at a rate of 9% per year.  *Id.* at 9; N.Y. C.P.L.R. § 5004.  Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, 12-CV-4760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013).  Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest.  *See Fermin*, 93 F. Supp. 3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest[.]") (quotation omitted).  A common date is "[t]he median date between the earliest ascertainable date the cause of action existed and the date the action was filed[.]"  *Gunawan v. Sake Sushi Rest.,* 897 F. Supp. 2d 76, 93 (E.D.N.Y. 2012); *e.g., Khurana v. JMP USA, Inc.*, No. 14-CV-4448, 2017 WL 1251102, at *17 (E.D.N.Y. Apr. 5, 2017).

The unpaid overtime wages and spread of hours due to Plaintiff under NYLL is $46,179.13.[8]  The relevant period of employment for those wages is September 1, 2015 through June 26, 2016.  This action was filed August 31, 2017.  The mid-point between September 1, 2015 and August 31, 2017 (which is exactly 2 years because of the leap year) is August 31, 2016.  The Court recommends that pre-judgment interest be awarded in a daily amount of $11.39 from August 31, 2016 until the day final judgment is entered. *See Romero*, 2017 WL 4480758, at *15.

F.  Attorney's Fees and Costs

Plaintiff seeks a total of $4665 in attorney's fees and $1306 in costs for a total of $5971.  When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by examining what reasonable clients would be willing to pay.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections*, 522 F.3d 182, 183-84 (2d Cir. 2008).  To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed.  *Id*.  The next step is to determine the reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007).  The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary.  *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

---

[8] The total amount ($46,179.13) at 9% a year results in $4156.12 per year in interest, or $11.39 per day (rounded), based on 365 days per calendar year.

Turning first to the reasonable hourly rate, the Court first examines the experience and qualifications of counsel seeking the fee award.  In his declaration, Plaintiff's counsel Michael Faillace states that he has been practicing law since 1983 and is the managing member of Michael Faillace & Associates, P.C. (Declaration of Michael Faillace, Dkt. No 24 ("Faillace Decl.") ¶ 65(i)).  He also provides a general time sheet describing the work performed and time spent on this matter.  (Dkt. No. 24, Ex. H).  He describes himself as an expert, speaker and writer on employment law, having served as in-house employment counsel from 1983-2000 with International Business Machines Corporation (IBM), and has taught employment discrimination law as an adjunct professor.  His regular billing rate is $450.  (Faillace Decl. ¶ 65(i)).  His associate, Sara Isaacson, has practiced litigation since 2015.  Her regular billing rate is $175.  (*Id.* ¶ 65(ii)).

 "[T]he prevailing hourly rate for partners in this district ranges from $300.00 to $400.00, and a reasonable hourly rate for a senior associate ranges from $200 to $300."  *Marshall v. Deutsche Post DHL*, No. 13-CV-1471, 2015 WL 5560541, at *9 (E.D.N.Y. Sept. 21, 2015); *see Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 313 (E.D.N.Y. 2015) (awarding $350 for a senior partner, $200 for junior partners and associates, and $75 for paralegals); *Griffin v. Astro Moving & Storage Co. Inc.*, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (reasonable hourly rates are $300 to $450 for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates).  As such, the rates for Mr. Faillace exceed or are just within the upper range of acceptable hourly rates for a partner.  The rates for Ms. Isaacson are within the range acceptable for junior associates.

27

Awarding fees at the higher end of this scale, as Plaintiff requests, is inappropriate given the default posture of this case.  *E.g.*, *Sun v. AAA Venture Capital, Inc.*, No. 15-CV-4325, 2016 WL 5793198, at *12 (E.D.N.Y. Sept. 12, 2016), *report and recommendation adopted*, No. 15-CV-4325, 2016 WL 5678561 (E.D.N.Y. Sept. 30, 2016)*, report and recommendation adopted as modified*, No. 15-CV-4325, 2016 WL 5868579 (E.D.N.Y. Oct. 6, 2016)*; Gonzales*, 2014 WL 1011070, at *19.  The nature of the work performed in this matter was relatively straightforward, particularly since Royal Thai and Phakamas defaulted, and no novel or complex issues were raised by Plaintiff. *Sun*, 2016 WL 5793198, at *12.  As such the court respectfully recommends that Mr. Faillace's hourly rate be reduced to $350, while Ms. Issacson's regular billing rate of $175 be used.

Turning next to the reasonableness of the time expended, according to the billing records submitted, counsel spent 12.75 hours (8.85 hours by Mr. Faillace and 3.9 hours by Ms. Isaacson) researching, drafting the complaint, and filing the motion for default judgment.  This is slightly above some FLSA and NYLL default judgment cases.  *See, e.g.*, *Bd. of Trs. of The United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 W.B.P. & A. Funds v. Akro Gen. Contracting, Inc.*, No. 15-CV-04901, 2016 WL 6775467, at *9 (E.D.N.Y. Aug. 15, 2016) (approving 7.1 hours of work by attorney and 2.5 hours by her paralegal for "an unopposed motion for default judgment and associated documents in a case involving no complex issues of law"), *report and recommendation adopted*, 2016 WL 6779487 (E.D.N.Y. Nov. 15, 2016).  It is less than others, as well.  *E.g.*, *Zhang*, 2016 WL 4124304, at *7 (approving total of 22.1 hours in default judgment FLSA case).  Having reviewed the hours and time records submitted, the Court finds that the hours expended to be reasonable.

The Court thus respectfully recommends the award of $3780 in attorney's fees (8.85 hours for Mr. Faillace billed at a rate of $350 per hour and 3.9 hours for Ms. Isaacson billed at a rate of $175 per hour).

G.  Costs

Under both FLSA and NYLL, a prevailing plaintiff is entitled to recover costs from the defendant.  *See* 29 U.S.C. § 216(b); NYLL § 663(1).  Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying." *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008).  Only those costs that are tied to "'identifiable, out-of-pocket disbursements'" are recoverable.  *Moon v. Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir. 1987)). Plaintiff requests recoupment of the filing fee in the amount of $400.  Plaintiff also requests amounts of $75, $75, and $756 for a process server.  Although no invoices are submitted as evidence, the filing fee is recoverable; the docket indicates the filing fee was paid (Dkt. No. 1).  *See, e.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (filing fees are recoverable without supporting documentation if verified by the docket).

However, the process server fees, especially a single charge for $756,[9] without any additional details provided (*e.g.* an invoice) are not recoverable.  *See, e.g.*, *Martinez*,

---

[9] Even if Plaintiff is able to produce documentary evidence for this charge, the Court would decline to award it.  While courts have discretion to grant appropriate process server fees, such fees must be within the range of costs that would have been incurred had the United States Marshal Service effected service, *see United States v. Merritt Meridian Construction Co.*, 95 F.3d 153, 172 (2d Cir. 1996), which is currently $65 per hour, 28 C.F.R. § 0.114(a)(3).

2017 WL 5033650, at *29 (denying four fees of $75.00 each for service of process fees in the absence of supporting documentation).

It is respectfully recommended then that Plaintiff be awarded $400 in costs.

Conclusion

For the reasons stated above, it is respectfully recommended that default judgment be entered and Plaintiff be awarded:

- $43,509.38 in unpaid overtime wages,

- $2669.75 in spread of hours pay,

- $46,179.13 in liquidated damages,

- pre-judgment interest in an amount to be calculated by the Clerk of Court by multiplying $11.39 by the number of days from August 31, 2016 until the entry of final judgment,

- $10,000 in statutory damages for violation of notice and record keeping and wage statement provisions,

- $3780 in attorney's fees and $400 in costs,

- and if any amount of the total judgment remains unpaid ninety days following judgment or ninety days after the expiration of time to appeal and no appeal is filed (whichever is later), for the total amount of judgment to automatically increase by 15% under NYLL § 198(4).  *See, e.g.*, *Gamero*, 2017 WL 4326116, at *26; *Romero v. Anjdev Enters., Inc.*, No. 14-CV-457, 2017 WL 548216, at *13 (S.D.N.Y. Feb. 10, 2017) ("Pursuant to [ ] NYLL, 'if any amounts [of damages awarded under NYLL] remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.'") (quoting *Hernandez v. JRPAC Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *36 (S.D.N.Y. June 9, 2016)).

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by

30

the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely objections may waive the right to appeal the District Court's order. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

Plaintiff shall serve a copy of this Report and Recommendation on the Defendants and file proof of such service in the record.

Sanket J. Bulsara
United States Magistrate Judge

Brooklyn, New York
February 6, 2018